**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **JOE HOLLINGSHEAD, Individually and** | § | |
| **as Representative of All Persons** | § | |
| **Similarly Situated** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. _____** |
| | § | |
| **AETNA HEALTH INC.** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT**

Joe Hollingshead ("Hollingshead"), Plaintiff in the above styled and numbered cause, files this Class Action Complaint, Individually and as Class Representative, complaining of Aetna Health Inc. ("Aetna"), and in support thereof would respectfully show the Court as follows:

## I.  INTRODUCTION

1.      This is a suit for money damages and declaratory relief on behalf of Plaintiff and all persons similarly situated (collectively referred to as the "Class" or "Plaintiffs") as a result of Aetna's wrongful actions outlined below.

2.      Aetna is a plan administrator for Employee Retirement Income Security Act managed care plans provided by employers, including Hollingshead's employer, Chevron Phillips.  Additionally, the conduct described herein constitutes a pattern of practice employed by Aetna with regard to all ERISA plan beneficiaries or individual or group insurance policyholders. Aetna, as a plan administrator and, more generally, as part of its normal operating procedure as a medical insurance company, advertised, solicited and sold health insurance plans

(or their administration) providing comprehensive health insurance coverage and/or health plan administration to its plan participants or policyholders.[1]   Hollingshead is one of Aetna's plan participants who expected to enjoy the benefits of an Aetna administered medical plan, attached as Exhibit "A."   To fulfill its contractual and statutory obligations to its plan beneficiaries and policyholders, including Hollingshead, Aetna is required to promptly pay medical claims properly submitted to Aetna by Plaintiffs' health care providers.   For example, Aetna as Hollingshead's plan administrator is required to:

> [P]ay[] benefits for services and supplies that are "medically necessary" (as determined by Aetna) for the diagnosis, care or treatment of an illness or injury... To be considered medically necessary, services and supplies must be provided for the purpose of preventing, evaluating, diagnosing or treating an illness, injury, disease or its symptoms.[2]

Aetna has breached its contractual obligations by failing to pay Hollingshead and other similar situated persons' medical claims in accordance with Aetna's contractual and statutory obligations.

3.      Hollingshead is insured through his employer, Chevron Phillips.   Hollingshead and his minor son, Shay Hollingshead, are insured by the Plan.   On October 19, 2012 Shay Hollingshead was seriously injured in a car accident and required significant emergency medical care and treatment at Memorial Hermann Hospital.   During Shay's course of treatment at Memorial Hermann, Aetna was presented with numerous medical claims that it has refused to

---

[1] *See* Exhibit "A," the Plan.

[2] *Id.* at p. 61.

pay.[3]  To date, Aetna has failed to pay all of Hollingshead's medical claims that are the result of Shay's care and treatment that resulted from the October 19 accident.[4]

4.      Aetna has refused to pay Hollingshead's medical claims because "Aetna [] requires accident details from Shay and [] a letter from [Shay's] auto insurance stating if they are going to pay any of his medical or PIP."[5]  Until that time, "Aetna has denied [Shay's] claims."[6]

5.      Aetna, through its strong-armed tactics, is avoiding, delaying, or denying policy claims in an unlawful and illegal manner, and in doing so has systematically breached its contractual obligations to its plan members and policyholders, and has violated state and federal statutes concerning the prompt payment of properly submitted claims.

6.      Aetna is attempting to obtain an extra-contractual right through extortion—rather than subrogate its claims in accordance with the Policy, it seeks to preemptively avoid payment of claims to health care providers by requiring policyholders that have additional coverage to disclose that coverage and, failing that, Aetna refuses to pay claims in accordance with the Policy.  In the event a plan member or policyholder has additional coverage that may contribute to the costs of their care, Aetna automatically deducts that collateral source amount from payments made to the health care provider.

## II.  JURISDICTION & VENUE

7.      Venue is proper in the Southern District of Texas because Aetna conducts substantial business in the district and because the Southern District is where the breach of the subject Plan took place. 29 U.S.C.A. 1132(e)(2). Additionally, a substantial part of the acts or

---

[3] Exhibit "B," *email correspondence from Sondra Howard, Patient Acct. Rep. for Memorial Hermann*.

[4] *Id.*

[5] *Id.*

[6] *Id.*

omissions occurred within the district, as Hollingshead's representative transaction giving rise to this litigation and complained of herein occurred there. 28 U.S.C.A. 1391(a).

8.      This Court has subject matter jurisdiction over civil actions brought under 29 U.S.C.A. 1132(a)(1)(A)&(B) for claims arising under the Employment Retirement Income Security Act ("ERISA").  Additionally, this Court has jurisdiction over this action pursuant to 28 U.S.C.A. § 1453(a)&(b), Class Action Fairness Act.

9.      Plaintiffs' individual claims are greater than the jurisdictional limits of the Court.

### III.  THE PARTIES

10.     Hollingshead is an adult residing in Texas.  Hollingshead is a Member of the Class defined herein and seeks to be certified as a Representative of the Class.

11.     Aetna is a domestic for-profit publicly traded insurance company engaged in the business of selling health insurance and providing ERISA plan administration in the state of Texas and throughout the United States for the purpose of profit.  Aetna may be served with civil process by serving its registered agent for service, CT Corporation System, at 350 North St. Paul Street, Dallas, Texas 75201.

### IV.  STATEMENT OF FACTS

12.     Plaintiffs' allegations are based on information and belief stemming from the investigation conducted by Plaintiffs' counsel, except for the allegations regarding Hollingshead, which are based on Hollingshead's personal knowledge.  The sources of Plaintiffs' information and belief include, but are not limited to, public documents, public reports, correspondence, and Plaintiffs' counsel's investigation.

### A.  Facts Relevant To Hollingshead

13.     Hollingshead, as an employee of Chevron Phillips in Houston, Texas, is a plan beneficiary covered by a self-funded ERISA plan administered by Aetna. The Plan covers Hollingshead and his son, Shay's medical care and treatment.

14.     On October 19, 2012 Shay Hollingshead was driving his 2002 Ford Focus when that vehicle was struck by another vehicle.  Shay was severely injured.  Shay's friend, coworker and passenger, Shawn Williams, Jr., was killed in the accident.

15.     Shay required significant care and treatment at Memorial Hermann Hospital in the months that followed.  Thankfully Mr. Hollingshead had health insurance with Aetna.

### B.  Aetna's Conduct

16.     Aetna has previously refused to pay Shay's medical claims, and has "den[ied]" the claims.  Aetna's stated reason for denial—that it requires evidence that Shay is either covered or not covered by additional or other insurance that may cover some portion of Shay's health care claims—is a breach of the clear terms of the Plan.

17.     Rather than fulfill its contractual duties and statutory obligations to its plan beneficiaries and policyholders in Texas and throughout the United States, Aetna has engaged in a course of conduct designed to avoid its obligations in accordance with the Plan, or any insurance contract Aetna offers.

18.     Aetna, like almost all insurance companies, maintains a right to subrogation.  That is, Aetna can seek reimbursement of plan or policy proceeds properly paid for claims submitted by or on behalf of a plan beneficiary or policyholder if the care and treatment was necessitated by an event in which other coverage—another collateral source—provides coverage.  For example, Aetna can seek reimbursement from a collateral source when a policyholder is involved

5

in an automobile accident and that policyholder has uninsured/underinsured motorists coverage or personal injury protection coverage.  In that case Aetna can seek reimbursement from the UIM/PIP carrier, or from any at-fault party that has liability coverage.  Aetna's subrogation right accrues when a plan member or policyholder is "in possession of funds from [a responsible third-party]," that caused the covered event necessitating the care and treatment Aetna paid for under the plan or policy.

19.     In Hollingshead's case, Chevron Phillips's plan actually owns the subrogation right, but Aetna administers the claims process, including asserting a right to subrogation or a subrogation lien.

20.     Nevertheless, Aetna, as the plan administrator, and more broadly, in their normal course and practice as an insurance company, is responsible for asserting a subrogation interest, either on behalf of itself as the insurer, or as the plan administrator.

### C. Pre-emptive Subrogation

21.     Aetna's subrogation interest—or the subrogation interest of the plan fiduciary if an ERISA plan—does not accrue until the policyholder or plan beneficiary is actually in "possession of funds" from the responsible party.  However, Aetna, as a means for pre-emptively asserting its subrogation interest and avoiding the necessity of seeking reimbursement subsequent to paying a properly submitted medical claim, will deny legitimate claims and withhold claim payments until evidence of additional insurance coverage is presented to Aetna.

22.     By way of example:

Policyholder A is rear-ended and taken to the hospital for emergency care and treatment. Under the clear terms of Policyholder A's insurance policy with Aetna, Aetna must pay properly

submitted health care claims as a result of this needed medical care.  But instead of paying the properly submitted claim presented by the hospital, Aetna refuses.

Instead, Aetna advises the hospital that the claims are denied until Policyholder A demonstrates she has—or lacks—UIM coverage.  The hospital advises Policyholder A of Aetna's requirement to demonstrate UIM coverage or lack thereof, and that the claim has been denied.  In the meantime, the hospital issues a bill to Policyholder A, and, if it goes unpaid, a delinquency letter will result.

In these circumstances, Policyholder A provides Aetna with a copy of her UIM policy, which provides for $50,000.00 in UIM coverage.  The hospital's total bill that was submitted to Aetna is $75,000.00.  After receiving Policyholder A's UIM coverage, Aetna finally issues payment to the hospital for $25,000.00, or for the total amount of the claim minus the potential UIM coverage.

23.    Upon information and belief, and based on our investigation, Aetna does this 100's or 1000's of times per day, everyday, throughout the United States.

### D. The Consequences

24.    Aetna's unlawful action of denying properly submitted medical claims in order to extort evidence of coverage that Aetna *may* have a subrogable right has significant consequences, both to plan members and policyholders, and to health care providers.

25.    By denying payments, Aetna wrongfully maintains millions of dollars—daily— that it is otherwise obligated to pay.  In many cases, policyholders or plan beneficiaries are never protected by their respective plan or policy due to Aetna's actions.  For example and upon information and belief, a comatose man in his 20's currently being treated at Memorial Hermann Trauma Center has an Aetna health insurance policy that has never paid for his medical claims of

more than $1 million.  Because the man is comatose and unable to provide information concerning his potential UIM coverage to Aetna, Aetna has denied his claim.

26.     Aetna is shifting its subrogation burden to plan beneficiaries, policyholders, and health care providers, rather than managing a subrogation department or legally pursuing its subrogation rights.

27.     Aetna, by preemptively asserting its subrogation right, is extorting individuals who are vulnerable and in need of their health insurance.  By denying properly submitted medical claims, Aetna is violating the clear terms of the Plan and all Aetna insurance policies, breaching their contract and violating ERISA and the insurance codes of all states that Aetna operates within and utilizes this extortionist policy.

## V.  CLASS ACTION ALLEGATIONS

28.     This action is brought as a class action under 28 U.S.C. § 1711, Rule 23(a) & (b) of the FEDERAL RULES OF CIVIL PROCEDURE, and TEXAS INSURANCE CODE § 541.251. Hollingshead believes Aetna's conduct has been systematic and continuous and has affected similarly situated Plaintiffs over time.  Hollingshead brings this class action to secure redress for Aetna's denial of properly submitted insurance claims, and for ERISA, statutory and other common law causes of action.  Aetna's obligations and conduct have been uniform throughout the Class Period and there are common questions of law and fact that affect the entire Class.

29.     Hollingshead brings this action individually and on behalf of all persons similarly situated and seeks certification of the following Class:

All persons who were issued Aetna policies or ERISA plans in which Aetna acted as plan administrator and in which Aetna's right to subrogate is the same, or substantially similar, to the Plan issued by Aetna to Hollingshead and who:

(a)     are currently insured or whose ERISA plan is administered by, or at the time of a medical loss were insured or whose plan was

administered by Aetna for comprehensive health insurance coverage (collectively the "Coverage"); and,

(b)     were preemptively denied health insurance coverage by Aetna prior to providing proof of other insurance coverage or the potential for a collateral source; and,

Excluded from this class are:

(a)     those who have not been preemptively denied health insurance coverage by Aetna as described above;

(b)     Plaintiffs' counsel; and

(c)     the Judge of the Court to which this case is assigned.

30.     Membership in the Class is so numerous as to make it impractical to bring all Class members before the Court.   See FED. R. CIV. P. 23(a)(1); see also TEX. INS. CODE § 541.256(1).   The exact number of Class members is unknown, but can be determined from the records maintained by Aetna.   Hollingshead believes there are thousands of persons in the Class.

31.     The named Plaintiff is a member of the Class of victims described herein.

32.     There are numerous and substantial questions of law and fact common to all of the members of the Class which will control this litigation and which will predominate over any individual issues.   See FED. R. CIV. P. 23(a)(2) & (b)(3); see also TEX. INS. CODE § 541.256(2). Included within the common questions of law and fact are:

(a)     whether Aetna's denial based on its requirement that a plan beneficiary or policyholder provide evidence of other insurance coverage or collateral source is unlawful;

(b)     whether Aetna's denial on this basis harms the plan beneficiaries or policyholders;

(c)     whether Aetna violated fiduciary duties under ERISA;

(d)     whether Aetna breached its contract with each Class member by failing to timely pay properly submitted medical claims;

      (e)      whether Aetna breached its contract with each Class member by denying medical claims unless and until the Class member provided evidence of other insurance or collateral source;

      (f)      whether Aetna violated ERISA;

      (g)      whether Aetna violated the insurance codes of the states, specifically the prompt payment statutes regarding properly submitted claims;

      (g)      whether Aetna was unjustly and substantially enriched as a result of this wrongful conduct;

      (h)      whether the acts and conduct of Aetna violated other state and/or common law; and,

      (i)      whether Class members were damaged as a result of this conduct.

33.    The claims of Hollingshead are typical of the claims of the Class and Hollingshead has no interests adverse to the interests of other members of the Class. See FED. R. CIV. P. 23(a)(3); see also TEX. INS. CODE § 541.256(3). To the extent that the Class must be divided into subclasses, that option is available given the uniformity of the questions of law and fact common to any subclasses. FED. R. CIV. P. 23(c)(5).

34.    Hollingshead will fairly and adequately protect the interests of the Class and has retained counsel experienced and competent in the prosecution of class actions and complex litigation. See FED. R. CIV. P. 23(a)(4).

35.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Absent a class action, the Class members will continue to suffer damages and Aetna's conduct will proceed without effective remedy.

36.    Most individual members of the Class have little interest in or ability to prosecute an individual action, due to the complexity of the issues involved in this litigation and the relatively small, although significant, damages suffered by each member of the Class.

37.     This action will cause an orderly and expeditious administration of class claims, economies of time, effort and expense will be fostered, and uniformity of decisions will be ensured.

38.     This action should present no difficulty that would impede its management by the court as a class action and is the best available means by which Hollingshead and the members of the Class can seek redress for the harm caused to them by Defendants.

## VI.  PLAINTIFFS' CAUSES OF ACTION AGAINST AETNA

### A.  Violation of 29 U.S.C. § 1132(a)(3)(B) Breach of Fiduciary Duty

39.     Aetna owes a statutorily prescribed fiduciary duty to Hollingshead and all similarly situated Plaintiffs and breached that duty by wrongfully denying claims as described above.  Aetna, as Hollingshead's plan administrator, was a fiduciary to Hollingshead at the time Plaintiff's cause of action arose.  During that time, Aetna denied Hollingshead's claims for unlawful reasons.

40.     Hollingshead and other similarly situated Plaintiffs are entitled to recover statutory, equitable, and remedial relief as deemed appropriate by this Court.  Hollingshead and all Plaintiffs are entitled to recover all unpaid, properly submitted medical expenses incurred under the clear terms of the plan or policy.

### B.  Violation of 29 U.S.C. § 1132(a)(1)(B) Enforcement of Rights

41.     Hollingshead, on behalf of himself and others similarly situated, sues to recover benefits due him under the terms of Hollingshead's ERISA plan and to enforce his rights under the plan, pursuant to 29 U.S.C. § 1132(a)(1)(B).  Aetna continued to accept and retain money representing premium payments from Hollingshead even after unlawfully denying his properly submitted medical claims.

42.     Hollingshead and other similarly situated Plaintiffs are entitled to recover statutory, equitable, or remedial relief as deemed appropriate by this Court.  Hollingshead and all Plaintiffs are entitled to recover all unpaid, properly submitted medical expenses incurred under the clear terms of the plan or policy.

### C.  Breach of Contract

43.     Hollingshead and the Class entered into contracts with Aetna by virtue of their purchase of a health insurance policy offered or administered by Aetna.  Hollingshead and the Class have complied with all conditions precedent under the Aetna policies or plans.  Hollingshead and the Class are entitled to timely payment of properly submitted medical claims.

44.     Aetna breached the express provisions of its contracts with Hollingshead and the Class by inexplicably denying properly submitted medical claims and attempting to preemptively assert its subrogation right.

45.     As a direct and foreseeable consequence of the foregoing, Hollingshead and the Class have been damaged in an amount to be determined at trial.

### D. Noncompliance with Texas Insurance Code Ch. 542: "Unfair Claim Settlement Practices Act"

46.     Aetna has violated TEX. INS. CODE Ch. 542 in one or more of the following ways:

(a)     not attempting in good faith to effect a prompt, fair, and equitable settlement of a claim submitted in which liability has become reasonably clear; and

(b)     compelling a policyholder to institute a suit to recover an amount due under a policy by offering substantially less than the amount ultimately recovered in a suit brought by the policyholder.

47.     Aetna has misrepresented to Hollingshead and the Class pertinent facts relating to the coverage at issue.  Specifically, Aetna has promised properly submitted medical claims will be paid and that has not been provided.

48.     Upon information and belief, these circumstances are not unique to Hollingshead, but affect the Class of similarly situated Plaintiffs.  The Class has been denied payment of claims for failing to demonstrate other insurance coverage that may contribute to a Class member's medical care costs. Aetna's act of denial of Class claims violates the TEXAS INSURANCE CODE as it applies to Hollingshead and similarly situated Plaintiffs residing in and covered by the TEXAS INSURANCE CODE.  To the extent Class members reside in other jurisdictions, those jurisdictions insurance codes regarding prompt payment of claims will apply.

### E. Noncompliance with Texas Insurance Code Ch. 541: "Unfair Claim Settlement Practices Act"

49.     Aetna has violated TEX. INS. CODE Ch. 542 in one or more of the following ways:

(a)     not attempting in good faith to effect a prompt, fair, and equitable settlement of a claim submitted in which liability has become reasonably clear; and

(b)     failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy for Aetna's denial of a claim;

(c)     failing within a reasonable time to affirm or deny coverage of a claim to a policyholder or submit a reservation of rights letter.

50.     Aetna has misrepresented to Hollingshead and the Class pertinent facts relating to the coverage at issue.  Specifically, Aetna has promised properly submitted medical claims will be paid and that has not been provided.

51.     Upon information and belief, these circumstances are not unique to Hollingshead, but affect the Class of similarly situated Plaintiffs.  The Class has been denied payment of claims for failing to demonstrate other insurance coverage that may contribute to a Class member's medical care costs. Aetna's act of denial of Class claims violates the TEXAS INSURANCE CODE as it applies to Hollingshead and similarly situated Plaintiffs residing in and covered by the TEXAS INSURANCE CODE.  To the extent Class members reside in other jurisdictions, those jurisdictions'

13

insurance codes regarding prompt payment of claims will apply.

### F.  Noncompliance with Texas Business and Commerce Code Section 17.50: "Texas Deceptive Trade Practices Act"

52.    Each of the acts described above, together and singularly, constitute a violation of the TEXAS DECEPTIVE TRADE PRACTICES ACT pursuant to its tie-in provision for TEXAS INSURANCE CODE violations.   Accordingly, Plaintiffs bring each and every cause of action alleged above under the TEXAS DECEPTIVE TRADE PRACTICES ACT pursuant to its tie-in provision.

53.    Aetna's actions, as described, also constitute violations of the TEXAS DECEPTIVE TRADE PRACTICES ACT, independently of its tie-in provisions.   At all times material hereto, Plaintiffs were consumers who purchased a health insurance policy issued by or administered by Aetna.  Aetna violated the TEXAS DECEPTIVE TRADE PRACTICES ACT in the following manners:

(a)    representing that the goods or services in question had sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that it did not have;

(b)    representing that an agreement confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law;

(c)    failing to disclose information about the goods or services in question that was known at the time of the transaction and the failure to disclose was intended to induce Plaintiffs into a transaction that Plaintiffs would not have entered into had the information been disclosed;

(d)    breach of the express warranty with regard to services; and

(e)    Aetna's unconscionable actions and/or courses of actions.

54.    Plaintiffs relied on these misrepresentations by Aetna to Plaintiffs' detriment. These misrepresentations were a producing cause of Plaintiffs' injuries in the form of actual

damages, consequential and incidental damages, special damages in the form of loss of use of the Plan or similar policies, and their benefits, attorney's fees and additional statutory damages.

55.     Plaintiffs are also entitled to mental anguish damages and statutory treble damages, because the actions of Aetna were made knowingly and intentionally, with the intent that Plaintiffs rely on the false misrepresentations of Defendants. Aetna's breach of the Deceptive Trade Practices Act violates the TEXAS BUSINESS AND COMMERCE CODE as it applies to Hollingshead and similarly situated Plaintiffs residing in and covered by the Act. To the extent Class members reside in other jurisdictions, those jurisdictions deceptive trade practices or consumer protection codes regarding the false representations of certain products or services will apply.

### G.  Breach of the Duty of Good Faith and Fair Dealing

56.     Aetna's conduct constitutes a breach of the common law duty of good faith and fair dealing owed to the insured in insurance contracts.

57.     Aetna's failures, as described above, to deny properly submitted claims, knowing that its liability under the Policy was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

### VII. DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201

### A.  Declaratory Judgment

58.     Aetna has systematically violated the insurance policies it has offered or administers to Hollingshead and the Class.  Hollingshead, individually and on behalf of the Class, seeks this Court's relief in declaring that Aetna cannot preemptively deny properly submitted medical claims in the manner described above.  Pursuant to FED. R. CIV. P. 23 (b)(2), final injunctive relief of this nature is appropriate, respecting the Class as a whole.

## VIII. CONDITIONS PRECEDENT

59.     All conditions precedent to Plaintiffs' right to relief have been performed or have

been satisfied.

## IX.  JURY DEMAND

60.     Pursuant to the FEDERAL RULES OF CIVIL PROCEDURE, Plaintiffs hereby

respectfully make this demand and application for a jury trial in this litigation.

## X. REQUEST FOR RELIEF

61.     Hollingshead and the Class have incurred economic damages as a result of

Aetna's conduct as described above.  Additionally, Hollingshead and the Class will continue to

suffer future harm as a result of Aetna's ongoing and future conduct.  As a result, Hollingshead

and the Class are entitled to and pray for the following damages against Aetna:

(a)     a declaration that Aetna's practice of preemptively deny properly
submitted medical claims until the plan or policy beneficiary has
provided evidence of other insurance is unlawful and that Aetna's
practice be permanently enjoined;

(b)     payment of all unpaid and improperly denied medical claims;

(c)     a declaration all of Aetna's plans and policies do not provide for a
preemptive right to subrogate;

(e)     a reasonable sum for attorney's fees, as found by the trier of fact,
with conditional sums for the services of Plaintiffs' attorneys in the
event of subsequent appeals;

(f)     post-judgment interest on the judgment at the rate provided by law
from the date of judgment until paid;

(g)     costs of suit;

(h)     18% of the amount of loss as damages pursuant to the TEXAS
INSURANCE CODE;

(i)     punitive damages; and

(j)      such other and further relief to which Plaintiffs may be justly entitled.

Plaintiffs respectfully request that Aetna be cited to appear and answer herein, that the Court certify this case as a Class Action and judgment be entered for Plaintiffs against Defendant for damages as described above and for such other and further relief whether at law or in equity, to which Plaintiffs may show themselves justly entitled.

FAUBUS & SCARBOROUGH LLP

By:    /s/ Joshua P. Davis
       Joshua P. Davis
       State Bar No. 24055379
       Federal Bar No. 1109971
1001 Texas Avenue, 11th Floor
Houston, Texas 77002
Tel:  713/222-6400
Fax:  713/222-7240

*Attorney-in-Charge for Plaintiff Joe Hollingshead and the Class*

OF COUNSEL:

FAUBUS & SCARBOROUGH LLP
Brian M. Keller
State Bar No. 00784376
Federal Bar No. 17095