UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOE HOLLINGSHEAD, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:13-CV-231 |
| | § | |
| AETNA HEALTH INC., | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Pending before the Court is Defendant Aetna Health, Inc.'s ("Aetna") Motion to Dismiss Plaintiff's First Amended Complaint and Brief in Support (Doc. 12) and Plaintiff Joe Hollingshead's ("Hollingshead") Motion for Leave to file Second Amended Class Action Complaint (Doc. 40) and Amended Motion for Leave for File Plaintiff's Second Amended Class Action Complaint (Doc. 51).[1]  Upon review and consideration of the motions, the responses, and the applicable law, the Court grants Aetna's motion to dismiss and denies Hollingshead's motions for leave to file a second amended class-action complaint.

**I.   Background**

On January 30, 2013, Hollingshead sued Aetna in this Court on behalf of himself and all persons similarly situated.  Pl. Original Class Action Compl. (Doc. 1).  Aetna is the plan

---

[1] Responsive pleadings include the following:
- Hollingshead's Corrected Response to Aetna's Motion to Dismiss (Doc. 20)
- Aetna's Reply in Support of Its Motion to Dismiss (Doc. 24)
- Hollingshead's Surreply to Aetna's Motion to Dismiss (Doc. 29)
- Hollingshead's Supplemental Reply to Aetna's Motion to Dismiss (Doc. 32)
- Aetna's Response in Opposition to Hollingshead's Motion for Leave to File Second Amended Class Action Complaint (Doc. 45)
- Aetna's Response in Opposition to Hollingshead's Amended Motion for Leave to File Plaintiff's Second Amended Class Action Complaint (Doc. 51)
- Hollingshead's Reply to Aetna's Response to His Amended Motion for Leave to File Plaintiff's Second Amended Complaint (Doc. 64)

administrator for a managed care plan ("the Plan") provided by Hollingshead's employer, Chevron Phillips, which covers medical treatment for Hollingshead and his son, Shay. *Id.* at 2–3. Pl. First Am. Class Action Compl. ¶ 2. (Doc. 6). The Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1101–1461, governs the Plan. *Id.*

On October 19, 2013, Shay was seriously injured in a car accident. *Id.* ¶ 3. He received treatment for his injuries at Memorial Hermann Hospital. *Id.* Hollingshead submitted numerous medical claims for this treatment to Aetna. *Id.* On January 2, 2013, Hollingshead received an email from Sandra Howard, a patient account representative at Memorial Hermann, stating:

> Per our phone conversation on Monday, Aetna will require accident details from Shay and also will need a letter from HIS auto insurance stating if they are going to pay any of his medical or PIP [Personal Injury Protection][;] if he had liability only then just have them send letter of exhaustion. You can email or fax me this information and I will get it to Aetna for you. Aetna has denied his claims until they receive this information, any questions please call me.

Email Correspondence from Sondra Howard (Doc. 6-3) (caps in original). On February 11, 2013, Aetna sent Hollingshead a letter regarding the claims which stated:

> Please send a statement from your no-fault automobile insurance company showing whether these expenses have been paid or denied. When we receive this information, we will process this claim.
>
> Please understand that Aetna is the claim fiduciary and only provides administrative services such as claim processing. As the claim administrator Aetna is obligated to process the claims as we receive them from the provider and apply the benefits in accordance with the terms of the Summary Plan Description.

Letter from Aetna to Hollingshead dated 2/11/2013 (Doc. 6-4).

Based on these two correspondences, Hollingshead alleges that Aetna "immediately denied" Shay's medical claims pending receipt of information regarding potential collateral auto insurance coverage. Doc. 6, ¶¶ 3–7. According to Hollingshead, Aetna justifies these actions by pointing to a provision in the Summary Plan Description ("SPD") which requires beneficiaries to

provide "all information and proofs that may reasonably be required," and states that "benefits may be delayed or denied, [i]f you do not provide [information] *when it is requested*." *Id.* ¶ 17 (internal quotation marks omitted, emphasis in original). Hollingshead claims that Aetna violated this provision by denying benefits immediately, and not upon any refusal by him to provide the requested information. *Id.* ¶¶ 7, 17. Hollingshead does not claim that he ever provided the requested automobile insurance information, and the record shows that Aetna was still requesting the information when Hollingshead filed the lawsuit. Doc. 6-3.

Hollingshead asserts that Aetna's handling of Shay's claim is part of a general policy of "preemptive subrogation,"—denying legitimate claims until Aetna learns whether or not there is a collateral source for coverage and then deducting the amount of collateral funds prior to payment of benefits. *Id.* ¶¶ 4–6. According to Hollingshead, the subrogation right does not accrue until the plan beneficiary is actually in possession of funds from the responsible party or from their uninsured motorist ("UIM") coverage. *Id.* ¶ 22. Under the Plan terms, he claims, Aetna is required to "promptly pay medical claims properly submitted to Aetna" and then "seek reimbursement of plan or policy proceeds properly paid for claims … if that care and treatment was necessitated by an event in which…another collateral source [] provides coverage." *Id.* ¶¶ 2, 19. By requesting automobile insurance information, he avers, Aetna is shifting its subrogation burden onto policyholders. *Id.* ¶ 28. Hollingshead claims that by deducting the amount of collateral funds from the benefits prior to the receipt of such funds by the injured party, Aetna has violated its contractual and statutory obligations. *Id.* ¶¶ 2–6.

Portions of the SPD are attached to Hollingshead's complaint. Doc. 6-1. A number of provisions contained in the SPD are relevant to the claims at issue. First, the SPD contains a "Coordination of Benefits" ("COB") provision stating, in part:

> Many people have medical coverage from more than one source. When this happens, benefits payable from [the Plan] are coordinated with coverage you may have under another group medical plan. For more information, see "How Health Care Coordination of Benefits Works."

Doc. 6-2 at 6. The "How Health Care Coordination of Benefits Works," section elaborates on the "COB" provision as follows:

> You or a covered dependent may be entitled to benefits from another source that pays all or part of the expenses incurred for health care (medical, mental health or dental). If this is the case, benefits from [the Plan] may be reduced to an amount which, together with all benefits payable by other group plans, would not exceed the amount [the Plan] would have paid if no other plans existed…

Doc. 6-5 at 2. The Plan goes on to describe the order of payment where another plan exists:

> If [the Plan] is primary, its benefits are determined before those of another plan. The benefits or the other plan are not considered. When [the Plan] is secondary, its benefits are determined after those of the other plan. In such a case, this plan's benefits may be reduced because of the other plan's benefits…
>
> If this coordination of benefits provision applies to benefits to which you or your family members are entitled, the bills must be filed with the "primary" carrier before being filed with the "secondary" carrier. A copy of the primary plan's explanation of benefits should be included with the secondary plan claim.

*Id.* at 3. With regard to the effect of No-Fault Auto Insurance, the Plan explains:

> First-party auto insurance coverage is considered primary. The [P]lan coordinates the benefits payable under the [P]lan with the first-party benefits that automobile insurance pays or would pay without regard to fault for the same covered expenses. This also applies to the extent first-party auto insurance coverage is legally required but not in force. For more information, see "Subrogation" on page 290.

*Id.* at 4. The Plan's provision on "Subrogation" explains:

> This section applies whenever you or your dependent has recovered from an illness or injury for which another party (including your own insurer under an automobile or other policy) is responsible, and you are in possession of funds from that party related to your or your dependent's illness or injury for which [the Plan] paid benefits related to that illness or injury.
>
> If you or your dependent should receive or become eligible to receive benefits from [the Plan], an automatic equitable subrogation lien attaches to all the rights

> of recovery and other rights as a result of any claim that you or your dependent may have against any other party.

*Id.* at 19.

Hollingshead has filed this class action under 28. U.S.C. § 1711, Rules 23(a) & (b) of the Federal Rules of Civil Procedure, and the Texas Insurance Code § 541.251. *Id.* ¶ 28. He alleges that "Aetna's conduct has been systematic and continuous and has affected similarly situated Plaintiffs over time." *Id.* He seeks certification of the following Class:

> All persons who were issued Aetna policies or ERISA plans in which Aetna acted as plan administrator and in which Aetna's right to subrogate is the same, or substantially similar, to the Plan issued by Aetna to Hollingshead and who:
>
> (a) are currently insured or whose ERISA plan is administered by, or at the time of a medical loss were insured or whose plan was administered by Aetna for comprehensive health insurance coverage (collectively, the "Coverage"); and,
>
> (b) were preemptively denied health insurance coverage by Aetna prior to providing proof of other insurance coverage or the potential for a collateral source; and
>
> Excluded from this class are:
>
> (a) those who have not been preemptively denied health insurance coverage by Aetna as described above;
>
> (b) Plaintiff's counsel; and
>
> (c) the Judge of the Court to which this case is assigned.

*Id.* ¶ 29.

In support of his class allegations, Hollingshead offers an anecdote of an unidentified teenage boy at Memorial Hermann who he claims is an also Aetna policyholder. *Id.* ¶ 24. Hollingshead alleges that because the boy's family does not have information regarding his auto insurance coverage, they are unable to provide Aetna with a copy of his insurance policy and his claims of more than $1 million have been denied. *Id.* ¶ 24, 27. Hollingshead further alleges

"Upon information and belief, and based on our investigation, Aetna does this 100's or 1000's of times per day, everyday [*sic*], throughout the United States." *Id.* ¶ 25.

Hollingshead asserts a claim for benefits and/or to enforce his rights under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), and a claim for benefits based on an alleged breach of fiduciary duty under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).  Hollingshead asserts state-law claims under the Texas Unfair Claim Settlement Practices Act ("UCSPA"), TEX. INS. CODE Ch. 541–542,[2] and the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COM. CODE § 17.50.[3]  He also asserts common-law claims for breach of contract and breach of the duty of good faith and fair dealing. *Id.* ¶¶ 43–45, 56–57.  He seeks a declaratory judgment that Aetna cannot preemptively deny properly submitted medical claims in the manner alleged, injunctive relief, and damages including payment of all unpaid and improperly denied claims, attorney's fees and costs, 18% of amount of loss as damages under the Texas Insurance Code, and punitive damages. *Id.* ¶¶ 58, 61.

Aetna filed motions to dismiss Plaintiff's Original Class Action Complaint (Doc. 5) and Plaintiff's First Amended Class Action Complaint ("FAC") (Doc. 12).  Aetna argues that Hollingshead cannot maintain a cause of action under ERISA because the claims at issue implicated the Plan's "COB" provisions, not the Subrogation provisions, and Aetna acted in accordance with the "COB" provisions in handing Shay's claims. Doc. 12 at 7–9. Additionally, Aetna argues that Hollingshead cannot maintain claims under both Section 502(a)(1)(B) and Section 502(a)(3) of ERISA because the two provisions are mutually exclusive. *Id.* at 13–14.

---

[2] Chapter 541 of the Texas Insurance Code prohibits unfair competition and unfair practices by insurance companies and subjects them to civil liability for violations.  Tex. Ins. Code. §§ 541.001 *et seq.*  Chapter 542 of the Texas Insurance Code subjects insurance companies to civil liability if they unfairly and untimely process and treat a claim. *Id.* §§ 542.001 *et seq.*

[3] The DTPA is intended to protect consumers from, among other things, "false, misleading, and deceptive acts or practices in the conduct off any trade or commerce." Tex. Bus. & Com. Code § 17.46(a).

Lastly, Aetna argues that all of Plaintiff's state-law claims are preempted by ERISA. *Id.* at 15–16.

## II. Legal Standard

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). In determining plausibility, courts should first disregard "formulaic recitation[s] of the elements" of the legal claim as conclusory. *Id.* at 662. Second, the court must assume the truth of all factual allegations and determine whether those factual allegations allege a plausible claim. *See id.* "Determining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (internal citation omitted) (quoting FED. R. CIV. P. 8(a)(2)). If the facts fail to "nudge [the] claims across the line from conceivable to plausible, [then the] complaint must be dismissed." *Twombly*, 550 U.S. at 570. On a Rule 12(b)(6) review, the court may consider "documents attached to or incorporated in the complaint and matters of which judicial notice may be taken." *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) (citing *Lovelace v. Software Spectrum Inc.,* 78 F.3d 1015, 1017–18 (5th Cir. 1996)).

## III. Discussion

### A. *ERISA Preemption of State-Law Claims*

There is no dispute that the Plan's coverage is governed by ERISA. Congress enacted ERISA to uniformly protect the welfare of participants and beneficiaries of employee benefits

programs by providing regulatory requirements, procedures for enforcement, appropriate remedies, and easy access to federal courts. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). To ensure uniform regulation, ERISA has broad preemption provisions that are "deliberately expansive, and designed to establish [benefit] plan regulation as exclusively a federal concern." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987). ERISA preempts state laws in two ways—"complete preemption" under section 502(a), 29 U.S.C. § 1132(a), and "conflict preemption" under section 514(a), 29 U.S.C. § 1144(a).

"Section 502, by providing a civil enforcement cause of action, completely preempts any state cause of action seeking the same relief." *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999). If a participant or beneficiary files a claim that "at some point in time, could have [been] brought…under ERISA § 502(a)(1)(B) *and* where there is no other independent legal duty implicated by [the] defendant's action, then the claim is preempted by ERISA § 502(a)(1)(B)." *Davila*, 542 U.S. at 210. ERISA need not strictly duplicate a state-law cause of action for it to be preempted: "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.* at 211.

"Conflict preemption, also known as ordinary preemption, arises when a federal law conflicts with a state law…" *Arana v. Ochsner Health Plan*, 338 F.3d 433, 435–36 (5th Cir. 2003) (citing *Heimann v. Nat'l Elevator Indus. Pension Fund*, 187 F.3d 493, 499–500 (5th Cir. 1999). Section 514(a) states that ERISA "supersede[s] any and all State laws insofar as they may…relate to any employee benefit plan." 29 U.S.C. § 1144(a). The preemption clause is interpreted broadly in that a state law "relates to an employee benefit plan, in the normal sense of

the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines*, 463 U.S. 85, 96–97 (1983). "In the Fifth Circuit, section 514(a) "preempts a state law claim if that claim directly addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan, and if that claim directly affects the relationship between traditional ERISA entities." *McNeil v. Time Ins. Co.*, 205 F.3d 179, 191 (5th Cir. 1999).

In *Hermann Hosp. v. MEBA Med. Benefits Plan,* Hermann Hospital sued MEBA, an insurance company, for non-payment of services under an ERISA benefit plan. 845 F.2d 1286 (5th Cir. 1988). Hermann Hospital also filed common law claims, including breach of fiduciary duty and breach of contract, and the Fifth Circuit held that such claims fall within the scope of ERISA preemption. *Id.* (citing *Pilot Life Ins.*, 481 U.S. at 41). In *Davila*, the Supreme Court confronted similar claims brought against HMOs for improper denial of coverage under ERISA regulated plans. *Davila*, 542 U.S. at 204. Since the plaintiffs did not seek relief for a claim legally independent of ERISA, the cause of action fell within the scope of ERISA § 502(a)(1)(B), and was completely preempted. *Id.* at 214 (citing *Metro. Life*, 481 U.S. at 66). Likewise, Hollingshead's common law claims seek to recover under an ERISA-governed benefit plan, and are therefore completely preempt by ERISA. Accordingly, the Court dismisses Hollingshead's common-law claims for breach of contract and breach of fiduciary duty.

Similarly, Hollingshead's claims under the Texas Unfair Claim Settlement Practices Act, the Texas Deceptive Trade Practices Act also fall under ERISA's preemption clause, § 514(a). *See, e.g. Menchaca v. CNA Grp. Assur. Co.*, 331 F. App'x 298, 304 (5th Cir. 2009) (citing *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 274–75 (5th Cir. 2004)) ("Though ERISA also has a savings clause excepting from preemption any state laws 'which regulate insurance, banking, or securities,' we have previously held that claims under Texas Insurance Code § 21.21

(now § 541.001 *et seq.*) and 21.55 (now § 542.001 *et seq.*)…do not fall within that exception and are preempted."). *See also Optimal Health Care Serv. Inc. v. Travelers Ins. Co.*, 791 F. Supp. 163, 164 (E.D. Tex. 1992) (holding that ERISA preempts claims brought under the DTPA for failure to pay or misrepresenting benefits under an ERISA plan because such claims "relate to" the plan). Hollingshead's state-law claims under the Texas Insurance Code and the DTPA are preempted and must be dismissed.

Hollingshead contends that he should be allow to maintain his state-law claims on behalf of Aetna policyholders in the class whose plans are not governed by ERISA. Doc. 19 at 22. He cites *Churchill v. Cigna Corp.*, No. 10-6911, 2011 WL 3563489 (E.D. Penn.) for the proposition that "a plan beneficiary may bring class claims on behalf of both ERISA plan members, of which Churchill was one, and non-ERISA plan members." *Id.* at 11. Hollingshead's reliance on *Churchill* is misplaced. Churchill was an ERISA-plan policyholder who claimed that Cigna's uniform policy across all of its plans of denying benefits for certain types of treatment for Autism Spectrum Disorder violated ERISA. Although Churchill was permitted to bring claims on behalf of a class of plaintiffs who participated in Cigna-administered plans different than his own, the only claims at issue were ERSIA claims, and the court specifically assumed that "each Cigna member's health care plan is governed by ERISA." *Churchill*, 2011 WL 3563489, at *3. The court held that the determination of whether or not Cigna's uniform treatment of these claims violated ERISA could easily be litigated in a single forum. *Id.* at *6.

The class action that Hollingshead proposes to bring on behalf of both ERISA and non ERISA-plan policyholders is easily distinguishable from the class in *Churchill*. One of the requirements for Hollingshead to proceed as a class representative under Rule 23 is that "the claims [] of the representative part[y] are typical of the claims [] of the class." FED. R. CIV. P.

23(a)(3). The Rule 23 requirement of typicality would not be satisfied where a policyholder of a plan governed by ERISA represented a class including policyholders whose plans were not governed by ERISA. Hollingshead's claims arising only under ERISA would not be typical of those of class members whose claims arose only under state law. *See e.g. Kennedy v. Unumprovident Corp.*, 50 Fed. Appx. 354, 356 (9th Cir. 2002) (citing *Schnachner v. Blue Cross & Blue Shield*, 77 F.3d 889, 896 n.8 (6th Cir. 1996); *Bowers v. Jefferson Pilot Fin. Ins. Co.*, 166 F. Supp. 2d 552, 557 (E.D. Mich. 2001)) ("[T]he typicality requirement cannot be satisfied when the class representative may pursue only an ERISA claim, but is attempting to represent class members who can maintain claims only under state law."). Therefore, he fails to satisfy the prerequisites for bringing a class action under Rule 23.

In addition to his failure to satisfy the Rule 23 requirements, Hollingshead's class allegations, including his anecdotal story of the teenage boy at Memorial Hermann and his completely unsupported allegation that Aetna engages in a practice of "preemptive subrogation" "100's or 1000's of times per day," are woefully inadequate to state a plausible claim for relief. As such, all of his class claims must be dismissed pursuant to Rule 12(b)(6).

### B.   ERISA Claims

Under ERISA § 502(a)(1)(B), a civil action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B). Hollingshead asserts claims under ERISA § 502(a)(1)(B) to "recover all unpaid, properly submitted medical expenses incurred under the clear terms of the plan or policy, and all statutory, equitable, or remedial relief as deemed appropriate by this Court." Doc. 6 ¶ 44. Hollingshead also brings a claim under section 502(a)(3), which provides a

cause of action for injunctive or equitable relief for breach of fiduciary duty. 29 U.S.C. § 1132(a)(3).

Under the Supreme Court's holding in *Varity Corp. v. Howe*, 516 U.S. 489 (1995), where an insured has adequate redress for denied benefits through a remedial provision of ERISA section 502(a)(1), he has no claim for breach of fiduciary duty under section 502(a)(3), even if the claim under section 502(a)(1) is subsequently lost on the merits. In *Varity*, "the Supreme Court interpreted section 1132(a)(3) to allow plaintiffs to sue for breach of fiduciary duty for personal recovery when no other appropriate equitable relief is available. [Where the plaintiff] has adequate relief available for the alleged improper denial of benefits through his right to sue the Plans directly under section 1132(a)(1), relief through the application of Section 1132(a)(3) would be inappropriate." *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998). Because Hollingshead's claim for denial of benefits falls within section 502(a)(1), he cannot maintain an additional cause of action under section 502(a)(3). Therefore, his ERISA claim for breach of fiduciary duty is dismissed.

Hollingshead's only viable claim is that which he asserts for improperly denied benefits under ERISA section 502(a)(1)(B). This provision allows a beneficiary to bring suit if he believes that "benefits promised under the terms of the plan are not provided" or to enforce or clarify his rights under an ERISA plan. *Davila*, 542 U.S. at 210. Hollingshead asserts a claim under this provision based on Aetna's alleged violation of the Plan terms which require Aetna to "[P]ay[] benefits for services and supplies that are "medically necessary…" Doc. 6-2 at 2. He complains that Aetna breached its obligations under this provision of the Plan and under ERISA by "immediately" denying his claims and not denying them upon his failure to provide requested information. Doc. 6 ¶ 17. In addition, he claims that Aetna violated the terms of the Plan by

automatically deducting from benefits any available uninsured motorists ("UIM") coverage and fault 'no-fault' personal injury protection ("PIP") coverage. Doc. 6 ¶ 6. Aetna argues this claim must also be dismissed because Aetna acted in accordance with the terms of the SPD in handling Hollingshead's claims. Doc. 12 at 7–9.

Under the clear and unambiguous terms of the Plan's "COB" provisions, no-fault, first-party, automobile insurance is primary to the Plan, and therefore, benefits under the Plan are secondary and determined after those of an applicable automobile insurance policy. *See* Doc. 6-5 at 2. To effectuate this coordination of benefits and order of payment, the Plan specifically requires Aetna to request personal injury protection ("PIP")/no-fault coverage information *before* it adjudicates a claim. In addition, the terms of the Plan require the beneficiary "to furnish all information and proofs that may reasonably be required regarding any matters pertaining to the plan." Doc. 6-5 at 18. If the information is not provided when requested, payment of benefits "may be delayed or denied." *Id.* Hollingshead does not claim that he ever provided the requested information. Further, the record belies Hollingshead's assertion that his claims were "immediately denied." The letter sent from Aetna to Hollingshead on February 11, 2013 clearly indicates that the claims had not yet been processed. Based on the "COB" provisions, Aetna acted in accordance with the terms of the Plan by requesting the PIP-coverage information before adjudicating Hollingshead's claims.

The claims at issue do not implicate the Plan's subrogation provisions. Unlike PIP-coverage, UIM coverage would fall under the Plan's "Subrogation" provision only and not the "COB" provision. However, Hollingshead has never alleged any facts that Aetna requested information regarding potential UIM coverage at any time. Viewing the complaint in the light most favorable to Hollingshead, he fails to show that Aetna violated any terms of the Plan in its

handling of his claim. Accordingly, his claim under ERISA section 502(a)(1)(B) is also dismissed.

### C. Motions to Amend

During the pendency of Aetna's motion to dismiss Plaintiff's FAC, Hollingshead filed a motion for leave to file a Second Amended Class Action Complaint ("SAC") (Doc. 40) and an Amended Motion for Leave to file Plaintiff's SAC (Doc. 51). Both motions are opposed.

After a party's time to amend his complaint has passed, he may only amend with consent of the other party or leave of the court. Fed. R. Civ. P. 15(a). "[T]he grant or denial of an opportunity to amend is within the discretion of the District Court." *Foman v. Davis*, 371 U.S. 178, 182 (1962). There is generally a presumption in favor of granting leave to amend and a motion for leave to amend should not be denied unless there is undue delay, bad faith, or dilatory motive on the part of the movant; repeated failure to cure deficiencies; or undue prejudice to the opposing party. *U.S. ex rel Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 386 (5th Cir. 2003). A court does not abuse its discretion by denying leave to amend if the amendment would be futile. *Landavazo v. Toro Co.*, 301 Fed. Appx. 333, 337 (5th Cir. 2008). Allowing a plaintiff to amend a complaint is futile if the amendment could not survive a motion to dismiss under FED. R. CIV. P. 12(b)(6). *Id.* (citing *Briggs v. Miss.*, 331 F.3d 499, 508 (5th Cir. 2003)).

Hollingshead moves for leave to file a second amended complaint (SAC) on the ground that Aetna Life Insurance Company, and not Aetna Health, Inc., is the actual administrator of the Plan and thus the proper defendant in this case. Doc. 40. Hollingshead also adds a common-law bad faith claim and additional allegations which he contends "clarif[y] and flesh[] out [his] claims to more accurately describe the facts that have become known during the course of discovery." *Id.* Aetna opposes Hollingshead's motion and amended motion to file the SAC.

Doc. 45. It does not oppose a motion to substitute Aetna Life Insurance Company for Aetna Health, Inc., but does "not believe a motion to amend the pleading was necessary to substitute a party, since another pleading on file would require all parties to re-file the motion to dismiss briefing, which has already been filed twice." *Id.* at 2. Aetna argues that Hollingshead should not be permitted to continually amend his pleading to add conclusory allegations and futile claims. *Id.*

The Court agrees that filing a SAC complaint is not necessary to substitute Aetna Life Insurance Company for Aetna Health, Inc. as the proper defendant in this case. In addition, the Court finds that allowing Hollingshead to amend his complaint again is futile and will cause undue prejudice to Aetna. Adding another state-law claim to Plaintiff's complaint is futile and frivolous. Under clearly established precedent, state-law claims alleging improper denial of ERISA-plan benefits are preempted under ERISA. *Pilot Life Ins. Co.*, 481 at 48. The facts which Hollingshead adds to the SAC do nothing to support his claims, or enable him to survive a motion to dismiss. *See* Plaintiff's Second Amended Class Action Complaint (SAC) ¶¶ 3–6 (Doc. 40-1). After Aetna filed its first motion to dismiss, Hollingshead had an opportunity to amend his original complaint and he did nothing to correct the deficiencies contained therein which provided clear bases for dismissal of all of his claims. In his response, Hollingshead admitted that the FAC was nearly identical to the original complaint:

> "[T]he complaints are substantially similar. The Amended Complaint merely highlights and underlines (<u>literally</u>) what was previously alleged."

Doc. 20 at 2.

Hollingshead has already compelled Aetna to brief a second motion to dismiss to essentially address his typographical emphases. Allowing Hollingshead an opportunity for additional amendments to add more preempted claims or conclusory allegations would be futile,

prejudicial to Aetna, and would not change the outcome of Aetna's motion to dismiss. Accordingly, his motions for leave to amend are denied.

## IV.    Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that the Motion to Dismiss (Doc. 12) filed by Defendant Aetna Health, Inc. is **GRANTED**, and Plaintiff Joe Hollingshead's case is **DISMISSED**.

SIGNED at Houston, Texas, this 13th day of February, 2014.

*[signature]*

MELINDA HARMON
UNITED STATES DISTRICT JUDGE